IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DANIEL NAPHYS,

      Plaintiff and
      Counter Defendant,

   v.

PRUDENTIAL INSURANCE COMPANY
OF AMERICA,

      Defendant and
      Counter Claimant.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 16-1450 (JBS-JS)

**OPINION**

APPEARANCES:

Richard Lowell Frankel, Esq.
BROSS & FRANKEL, PA
102 Browning Lane
Building C-1
Cherry Hill, NJ 08003
    Attorney for Plaintiff and Counter Defendant

Robert T. Szyba, Esq.
SEYFARTH SHAW LLP
620 Eighth Avenue
32nd Floor
New York, NY 10018
    -and-
Amanda A. Sonnenborn, Esq. (pro hac vice)
Shelly R. Hebert, Esq. (pro hac vice)
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, IL 60603
    Attorneys for Defendant and Counter Claimant

**SIMANDLE**, District Judge:

## I.   INTRODUCTION

This matter comes before the Court by way of Plaintiff Daniel Naphys's ("Plaintiff") motion for summary judgment [Docket Item 43] and Defendant Prudential Insurance Company of America's ("Prudential" or "Defendant") cross-motion for summary judgment. [Docket Item 44.] Plaintiff alleges that Prudential's decision to terminate his long-term disability benefits under a health and welfare benefit plan sponsored by Prudential violates Section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a). [Docket Item 1.] Defendant also filed a Counterclaim to recover for alleged overpayment of benefits to Plaintiff. [Docket Item 4.]

The principal issues to be decided are: 1) whether the Court reviews this ERISA denial-of-benefits case de novo or for abuse of discretion; and 2) whether, viewed through the lens of the proper standard of review, either party is entitled to judgment on the merits of Plaintiff's denial-of-benefits claim as a matter of law. The Court must also determine whether Defendant is entitled to summary judgment on its Counterclaim for overpayment. For the reasons that follow, Plaintiff's motion for summary judgment will be denied, while Defendant's cross-motion for summary judgment will be granted with respect to the Complaint and denied with respect to Defendant's Counterclaim.

## II.    **BACKGROUND**[1]

The relevant facts are, for the most part, not in dispute. Plaintiff worked as a Senior Life Representative for Prudential from 1996 through on or around November 3, 2011. (AR 1913-1915, 1976.) As an employee of Prudential, Plaintiff participated in a health and welfare benefit plan sponsored by Prudential and governed by ERISA called "The Prudential Welfare Benefits Plan" (hereinafter, "the Plan"). (AR 0001-1724.) The Plan provides, among other things, long-term disability ("LTD") benefits to certain eligible participants who are "Totally Disabled." (PRU 0662.) Under the Plan, a person is considered "Totally Disabled" if he or she satisfies all of the following:

> **(A)** **Initial Period**. For the 12-month period beginning after the Elimination Period, the Employee will be considered Totally Disabled . . . , if:
>
> > (i)    He is unable to perform the Material and Substantial Duties of his Regular Occupation due to Sickness or Injury or both . . . ; and

---

[1] For purposes of the instant motion and pursuant to Local Civil Rule 56.1, the Court looks to the Complaint [Docket Item 1] when appropriate, Plaintiff's Statement of Undisputed Material Facts [Docket Item 43-3], Defendant's Statement of Undisputed Material Facts [Docket Item 44-34], Plaintiff's Responsive Statement of Material Facts [Docket Item 49-1], Defendant's Responsive Statement of Material Facts [Docket Item 48-1], and related exhibits and documents, which are referred to by Plaintiff as "AR XXXX" and by Defendant as "PRU XXXX," and will be referred to by the Court as "AR XXXX." Where not otherwise noted, the facts are undisputed by the parties.

> (ii)     He has a 20% or more loss in his Indexed
>          Monthly Earnings due to that Sickness or
>          Injury.
>
> **(B)  Secondary Period.** After the end of the 12-month
>        period beginning after the Elimination Period, the
>        Employee will be considered Totally Disabled . . .
>        if, due to that same Sickness or Injury, the
>        Employee is unable to perform the duties of any
>        Gainful Occupation for which he is reasonably
>        fitted by his education, training, or experience.

(Id.) Notably, the Plan limits certain conditions, including

"disabilities due in whole or in part to Mental Illness," to 24

months of benefits. (AR 0659-0660.)

Plaintiff stopped working at Prudential on or around

November 3, 2011. (AR 2811.) According to Plaintiff, he stopped

working because of a disabling combination of physical and

psychological conditions, including attention deficit disorder

("ADD"), depression, a pulmonary nodule, hyperlipidemia, and

gastroparesis.[2] (AR 1915.) These medical conditions were

diagnosed and/or treated by various physicians and specialists

around that time, including Dr. Michael Marone (a family

medicine doctor) on November 11, 2011 (AR 1915) and January 19,

2012 (AR 1957), Dr. Allen Zechowy (a board-certified

---

[2] Gastroparesis is a disorder that slows or stops the movement of
food from the stomach to the small intestines. Symptoms may
include a feeling of fullness, abdominal pain, nausea, and
vomiting. See Gastroparesis, Nat'l Inst. Of Diabetes &
Diagestive & Kidney Diseases, U.S. Dep't of Health & Hum.
Servs., https://www.niddk.nih.gov/health-information/health-
topics/digestive-diseases/gastroparesis/Pages/facts.aspx.

neurologist) on December 22, 2011 (AR 1932), and Dr. Leo Katz (a gastrointestinal ("GI") specialist) on April 20, 2011 (AR 2232, 2682), June 30, 2011 (AR 2187), and November 17, 2011. (AR 1943.)

Immediately following his departure from Prudential, Plaintiff applied for short-term disability ("STD") benefits, which Prudential approved in a letter dated November 17, 2011. (AR 1741.) Thereafter, Plaintiff received 26 weeks of STD benefits, the maximum duration for such benefits permitted under the Plan. (AR 1776-1777.)

Plaintiff applied for LTD benefits sometime before his STD benefits expired on May 3, 2012. (AR 1784-1788.) In order to determine whether Plaintiff was eligible for those LTD benefits, Prudential's Clinical Reviewer Jane Howard, R.N., Disability Claim Manager Samantha Millette, and Facilitator Andy Schopfer conducted an initial claims discussion on April 25, 2012, and determined that the "information in [his] file does support an impairment as the claimant is unable to handle stress and focus. . . . He also has a physical diagnosis of gastroparesis [and] he is . . . treating with a neurologist." (AR 2902.) They "agreed that it would be appropriate to follow again in 3 months, and to also have an activities check to determine if [Plaintiff] is socially active." (Id.) Plaintiff started receiving LTD benefits from Prudential, effective May 4, 2012. (AR 1784-1788.)

On August 8, 2012, Nurse Howard, Ms. Millette, and Mr. Schopfer conducted a second clinical review, this time noting that Plaintiff appeared to have significant anger issues, agreeing that Plaintiff remained impaired, and concluding that Plaintiff's claim should be reviewed again in four months to determine if there was any improvement in his condition. (AR 2895.)

On November 15, 2012, Ms. Millette reviewed Plaintiff's October 23, 2012 Activities of Daily Living Questionnaire (AR 2040-2047) and observed that he appeared to be functional at home and could do chores and drive, but had difficulty functioning in social settings. (AR 2893.)

Thereafter, Prudential sought updated medical records from Plaintiff's treating physicians in July 2012 (AR 1796), August 2012 (AR 1799), November 2012 (AR 1804), December 2012 (AR 1812), and March 2013. (AR 1818.) According to Prudential, these records indicated that Plaintiff was doing well on Abilify and his mood had improved in January 2013, but he was moderately depressed in February 2013 and his mood had worsened. (AR 2890.)

In a letter dated April 3, 2013, Prudential notified Plaintiff that it had completed its review of his claim for LTD benefits under the Plan's "gainful occupation" definition of disability and determined Plaintiff was "totally disabled" and, at this time, his LTD benefits would continue. (AR 1826.) As

Prudential explained, however, "[e]ven though benefits are going to continue beyond this initial period, we do not waive our right to continuously evaluate your claim under the more restrictive definition of total disability." (Id.) Furthermore, Prudential informed Plaintiff that "[d]isabilities which, as determined by Prudential, are due in whole or part to mental illness . . . have a limited pay period during your lifetime" of 24 months. (AR 1827.)

On October 4, 2013, Ms. Millette reviewed updated medical records from Plaintiff's behavior health providers, which indicated Plaintiff continued to have depression, anxiety, social stress, sleep problems, and issues with anger and aggression. (AR 2888.) Ms. Millette also noted that, "[w]hile we do have this information about his [behavior health] issues, we have not yet received the [medical records] from [Plaintiff's] other providers [i.e., his GI Specialist, Dr. Katz] . . . . [O]nce all the records are received, we will return to [the facilitated claim discussion] to review all of the information." (Id.) On November 27, 2013, Ms. Millette again reviewed Plaintiff's claim and noted that the "medical [information] is supportive of [Plaintiff's] continued inability to work due to [behavioral health] issues," but that Plaintiff's GI Specialist, Dr. Katz, still had not provided any updated medical records since 2012. (AR 2887-2888.) That same day, Prudential notified

Plaintiff by letter that his current LTD claim is based on "depression and anxiety, which are considered mental illnesses" subject to the 24-month limited pay period, but that Prudential was "also in the process of requesting updated information regarding [Plaintiff's] physical conditions in order to determine whether the 24-month limitation applies to [his] claim." (AR 1847-1848.)

On December 23, 2013, Plaintiff was seen in Primary Care, where it was noted that Plaintiff reported abdominal pain, decreased appetite, excessive stress, and nervousness. (AR 2145-2146.) On January 15, 2014, Plaintiff was seen for complaints of tingling in both hands and feet, as well as ankle pain, joint stiffness and pain, and back problems. (AR 2149.) On February 24, 2014, Plaintiff underwent a cervical MRI, which revealed a C5-6 central disk protrusion indenting the ventral thecal sac without canal stenosis or foraminal narrowing and at C6-7 a small central disc bulge without canal stenosis or foraminal narrowing. (AR 2196.) On March 7, 2014, Plaintiff returned to Dr. Katz and reported that he had abdominal pain, nausea, and increased urination. (AR 2472-2473.) Dr. Katz noted, among other things, that "[o]verall things are stable," and told Plaintiff to "[f]ollow up in 1 year." (Id.) Three days later, on March 10, 2014, Plaintiff visited Dr. Patel and reported abdominal pain

with decreased appetite and excessive stress and nervousness. (AR 2153-2154.)

After obtaining updated these medical records on February 21, 2014 (AR 1849) and March 20, 2014 (AR 1860), Prudential's Carrie Eccles, R.N. conducted another clinical review of Plaintiff's claim on April 16, 2014. (AR 2874-2883.) Nurse Eccles noted that Plaintiff reported in an April 14, 2014 telephone conversation that his alleged gastroparesis was now the main issue currently preventing him from returning to work. (AR 2874.) Nurse Eccles also reviewed all of Plaintiff's medical records, including those from his GI doctor, neurologist, pulmonologist, psychiatrist, and primary care physician. (AR 2875-2877.) With respect to Plaintiff's alleged gastroparesis, Nurse Eccles noted, among other things, that: (1) the medical information "supports [Plaintiff] has a [history] of Gastroparesis (GP), which [sic] a slowed movement of food from the stomach to the small intestines;" (2) "[i]n the 2.5 years [Plaintiff] has been [out of work], he has seen the GI [approximately] 3 times;" (3) "[t]reatment consists of dietary changes; ie small frequent meals;" and (4) Plaintiff "[d]enied any vomiting and weight was up to 190 [pounds]," which was 25 pounds more than his weight in February 2012. (AR 2879.) Based upon these observations, Nurse Eccles concluded that "[w]hile [Plaintiff] reports [his gastroparesis] makes him feel sick

everyday and wipes him out, records do not reflect this same severity of [symptoms]." (Id.) According to Nurse Eccles, "[w]ith severe [gastroparesis], would expect to see [emergency room] visits, anti-nausea meds and weight loss," and "[w]hile [Plaintiff] may carry the [diagnosis] of gastroparesis, symptoms are in excess of findings [and the records] do not reflect a severity that would rise to a level of impairment." (Id.)[3] Ultimately, Nurse Eccles concluded that she "was not able to identify any limitations from a psychological or physical standpoint or that [Plaintiff] is limited in his ability to walk, stand, sit, grasp, lift, push, pull or carry. Available records do not support an inability to concentrate [due to] physical or psychological reasons." (AR 2882.)

Based on Nurse Eccles' review and the medical records, Prudential decided that Plaintiff's claim that he was unable to work was not medically supported from either a physical or psychological standpoint and, in a letter dated April 21, 2014, Prudential terminated Plaintiff's LTD benefits. (AR 1862–1872.) Notwithstanding Nurse Eccles' opinion that Plaintiff was not disabled from a physical or psychological standpoint and that "the medical information does not support the extension of

---

[3] Nurse Eccles also evaluated Plaintiff's other purported physical and mental impairments, including ADD, pulmonary nodules, tingling in hands, bilateral foot and ankle pain, and depression/anxiety. (AR 2879–2881.)

benefits beyond April 30, 2014," Prudential notified Plaintiff that because he "had previously been advised that [his] claim would be subject to a 24 month limitation based on [his] previously diagnosed mental health condition," Prudential had "authorized the release of LTD benefits through May 3, 2014 and [his] LTD claim is being terminated effective May 4, 2014, the Mental/Nervous benefit limitation date." (AR 1864.)

On June 30, 2014, Plaintiff filed his first appeal of Prudential's decision to terminate his LTD benefits. (AR 2491-2494.) Plaintiff's appeal letter emphasized that his physical conditions (including gastroparesis, tardive dyskinesia, diaphoresis, pre-diabetes, dysautonomia, foot and ankle pain, itching, and back pain) prevented him from performing the duties of any gainful occupation. (Id.) Plaintiff also provided medical records and letters from his medical providers, including Joanne Diffenbaugh (a Licensed Professional Counselor and behavior health specialist), Dr. Katz (a GI specialist), Dr. Ambarish Patel (a family practitioner), and Dr. Allen Zechowy (a neurologist). (AR 2495-2499.)

Prudential obtained an independent medical review by Dr. Aviva R. Lehrfield-Herschman, a physician "who specializes in **Internal Medicine**," to review Plaintiff's appeal. (AR 1876) (emphasis in original). After reviewing Plaintiff's appeal and all of his medical records, Dr. Lehrfield-Herschman prepared a

11

report dated August 20, 2014 (AR 2537-2546), which is discussed in more detail in Section IV.C.1.a, <u>infra</u>. Ultimately, Dr. Lehrfield-Herschman agreed with Nurse Eccles' assessment and opined that Plaintiff did not have any limitations or restrictions from any one condition or combination of physical or psychological conditions from May 4, 2014, onward. (AR 2543.)

After reviewing Plaintiff's medical records, claim file, and Dr. Lehrfield-Herschman's report (AR 2861-2868), Prudential upheld its decision to terminate Plaintiff's LTD benefits in a letter dated September 23, 2014. (AR 1879-1885.) Prudential first explained that, "while [Plaintiff] continue[s] to report symptoms of depression, anxiety, panic disorder and ADD which may be disabling, no further benefits are payable for a condition due in whole or part to mental illness due to the 24 month benefit limitation of the policy." (AR 1883.) Prudential then explained that, based on Plaintiff's medical records, there was no evidence that Plaintiff had an "impairment or the need for any restrictions or limitations due to any of [his] physical conditions." (AR 1884.) Specifically, Prudential noted that the "medical records fail to support any examination or diagnostic studies or any intensity of treatment that would correlate with [Plaintiff's] GI complaints, and despite these complaints [Plaintiff had] gained weight." (AR 1884-1885.)

Meanwhile, Plaintiff was successful in his separate application for Social Security Disability benefits. (AR 2573-2580.) On November 23, 2015, Plaintiff filed a second (voluntary) appeal (AR 2567-2568), which he supplemented on April 17, 2015 with a copy of a favorable Social Security Disability decision issued by an Administrative Law Judge, and on April 23, 2015 with a letter from Dr. Patel and the results of lab studies. (AR 2592-2598.) On June 18, 2015, Plaintiff underwent an Electromyography ("EMG") of his upper extremities (AR 2404-2405), the results of which he submitted to Prudential as part of his second appeal. (AR 2831-2832.) On August 3, 2015, Plaintiff underwent additional EMG testing on his lower extremities (AR 2402), the results of which he submitted to Prudential as part of his second appeal. (AR 2825.) On August 15, 2015, Plaintiff visited the emergency room due to abdominal discomfort and had a CT performed, the results of which he also submitted to Prudential as part of his second appeal. (Id.)

Plaintiff's second appeal was reviewed by Prudential's Medical Director, Dr. Rajesh Wadhwa, who is board-certified in internal and occupational medicine. (AR 2844-2852.) Dr. Wadhwa reviewed the ALJ Decision and Plaintiff's medical records and, on several occasions, opined that Plaintiff retained capacity to work (AR 2812-2813, 2823-2827, 2831, 2850), as discussed in more detail in Section IV.C.1.b, infra.

On November 11, 2015 and November 23, 2015, one Prudential's claims adjusters, Joseph Walles, reviewed all of Plaintiff's records and documents in the claim file, along with the multiple medical reviews conducted by Dr. Wadhwa. (AR 2812, 2815-2823.) Based on this information, Prudential again upheld its decision to terminate Plaintiff's LTD benefits in a letter dated November 23, 2015. (AR 1898-1905.) In this letter, Prudential acknowledged that Plaintiff's medical records supported disability due to symptoms of depression, anxiety, and ADD, but again explained that these conditions were mental illnesses and subject to the Plan's 24-month payment limitation, which Plaintiff had exhausted as of May 3, 2014. (AR 1904.) Prudential also explained that, "[i]n order to remain covered for LTD benefits beyond May 3, 2014, we can only consider the impact of your physical medical conditions on your ability to function and to perform work duties. The above defined 24 month benefit limitation does apply to your claim for your symptoms of mental illness." (Id.)

With respect to the favorable ALJ decision, Prudential further explained that "[t]he major difference between our decision to terminate your claim for LTD benefits when the [Social Security Administration] found you to be eligible appeared to be based upon the impact of your mental health conditions on your functional capacity [and] [y]our LTD policy

has a 24 month benefit limitation for disabilities due in whole
or in part to mental illness." (AR 1905.) Thus, Prudential
viewed the Social Security Disability decision as being driven
by Plaintiff's mental illness and its impact upon his ability to
perform gainful employment. In sum, Prudential concluded there
was no evidence in Plaintiff's medical records to indicate that
his physical conditions, including gastroparesis, tardive
dyskinesia, and pulmonary nodule, rendered him unable to perform
work up to medium level capacity duties. (AR 1904.)

In the November 23, 2015 letter, Prudential also informed
Plaintiff that, under a Reimbursement Agreement he had signed on
May 23, 2012, Plaintiff was required to pay back any Social
Security Disability benefits he had received as a result of the
favorable ALJ decision. (AR 1905.) According to Prudential's
records, Plaintiff was overpaid by $52,930.92 for the period of
June 1, 2012 through May 3, 2014. (AR 2842.)

After exhausting his administrative appeals,[4] Plaintiff
filed the Complaint in this action on March 15, 2016. [Docket
Item 1]. In its Answer, Defendant brought a counterclaim against
Plaintiff to recover overpayment of LTD benefits that were not

---

[4] Claimants must "exhaust the administrative remedies mandated by
ERISA § 503, 29 U.S.C. § 1133, before filing suit under §
502(a)(1)(B)." LaRue v. DeWolff, Boberg & Assocs., Inc., 552
U.S. 248, 258–259 (2008); see also Metropolitan Life Ins. Co. v.
Price, 501 F.3d 271, 280 (3d Cir. 2007).

reduced for Social Security Disability payments Plaintiff had received. [Docket Item 4.] Following discovery, Plaintiff filed a motion for summary judgment [Docket Item 43] and Defendant filed a cross-motion for summary judgment. [Docket Item 44.] Both parties filed briefs in opposition to the motions for summary judgment [Docket Items 48 & 49], and both parties filed reply briefs. [Docket Items 50 & 51.] The pending motions are now fully briefed and ripe for disposition. The Court decides these motions without oral argument pursuant to Fed. R. Civ. P. 78.

## III. STANDARD OF REVIEW

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. The non-moving

16

party "need not match, item for item, each piece of evidence proffered by the movant," but must present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. Boyle v. Cty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 252).

The summary judgment standard is not affected when the parties file cross-motions for summary judgment. See Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987). Such motions:

> [A]re no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

Transportes Ferreos de Venez. II CA v. NKK Corp., 239 F.3d 555, 560 (3d Cir. 2001) (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)). "If upon review of cross-motions for summary judgment [the record reveals] no genuine dispute over material facts, then [the court] will order judgment to be entered in favor of the party deserving judgment in light of the law and undisputed facts." Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir. 1998) (citing Ciarlante v. Brown & Williamson Tobacco Corp., 143 F.3d 139, 145-46 (3d Cir. 1998)).

## IV.  DISCUSSION

### A.  Abuse of Discretion Standard Applies to Plaintiff's ERISA Claim

The parties agree that the Plan at issue is covered by ERISA. (See Pl.'s Br. [Docket Item 43-4] at 5; Def.'s Br. [Docket Item 44-33] at 2.) Pursuant to ERISA, "a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A denial of benefits challenged under Section 1132(a)(1)(B) must be reviewed by the Court de novo, unless the terms of the plan "give[] the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the terms of a plan grant the administrator such authority, the Court reviews a denial of benefits for abuse of discretion. Id.

The parties disagree over whether the Plan grants Prudential the discretionary authority to determine eligibility for benefits or to construe the terms of the Plan. Defendant maintains that the Plan "clearly provides that the Administrative Committee has delegated to Prudential (and more specifically [Integrated Disability Management Unit ("IDMU")], a

division of Prudential) its fiduciary duties and discretionary authority with respect to LTD benefits under the Plan." (Id. at 8.) Plaintiff, meanwhile, argues that, "while it appears the Administrative Committee did have discretionary authority, the [Plan] did not transfer that authority to [Prudential]. Instead, the plain language stops short only transferring the responsibility for making claims determinations, and clearly stating that it was only partially delegating 'certain of its duties.'" (Pl.'s Opp. Br. [Docket Item 49] at 5.) In other words, Defendant argues that the Court should review Prudential's decisions for abuse of discretion, while Plaintiff argues that those decisions should be reviewed de novo.

In resolving this question, the Court notes that the scope of Prudential's authority "depends upon the terms of the [P]lan," and "no magic words" predetermine the scope of judicial review. Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 413 (3d Cir. 2011) (citations omitted). Rather, "discretionary powers may be granted expressly or implicitly," but must, at a minimum, "communicate the idea that the administrator . . . has broad-ranging authority to assess compliance with pre-existing criteria" and "to interpret the rules, to implement the rules, and even to change them entirely." Id. at 413, 417 (citations omitted).

In applying these tenets here, it is apparent that the Plan clearly gives Prudential full discretion to determine eligibility for benefits. The Plan provides, in relevant part:

> 3.2 **Fiduciary Discretionary Authority.** The Administrative Committee . . . (or each [of its] delegates), shall have **full discretionary authority** to determine all questions and matters that may arise in the administration . . . of the Plan under [its] . . . responsibilities or exercis[e] any authority under the Plan, including without limitation the resolution of questions of fact, interpretation or application. In all such cases, each decision of the . . . Committee (or its delegates) shall be final and binding upon all parties. Benefits under the Plan will be paid only if the Administrative Committee decides in its discretion that the applicant is entitled to them.

(AR 0033) (emphasis added). The Plan also grants the Administrative Committee "the power to delegate [its] respective fiduciary responsibilities to employees of the Employer or to other individuals or organizations by notifying them as to the duties and responsibilities delegated." (Id.) Under the Plan, the Administrative Committee delegated to IDMU, a division of Prudential, the responsibility of serving as Claims Administrator and Claims Fiduciary with respect to LTD benefits. (AR 1715.) Specifically, IDMU was "delegated the responsibility to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits." (AR 1649, 1701, 1715.)

Within this context, the Court finds little difficulty reaching the conclusion that, under the Plan, Prudential

20

(through the IDMU) possessed full discretionary authority to construe the terms of the Plan and to determine eligibility for benefits, and that Prudential's decision regarding the denial of LTD benefits to Plaintiff must, therefore, be reviewed for abuse of discretion. See Killebrew v. Prudential Ins. Co. of America, 723 F. App'x 133, 135 (3d Cir. 2018) (affirming district court's finding that abuse of discretion standard applied to virtually same situation "where the benefit plan gives the plan's administrator discretion to determine eligibility for benefits"); Scotti v. Prudential Welfare Benefits Plan, et al., 2009 WL 2243959, at *3 (D.N.J. July 23, 2009) (holding that substantially similar benefits plan granted the administrator discretionary authority); see also Fleisher v. Standard Ins. Co., 679 F.3d 116, 121 (3d Cir. 2012) (finding policy that "vests the administrator with 'full and excusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve any questions arising in the administration, interpretation, and application of the Group Policy' . . . clearly triggers application of the deferential abuse of discretion review").

Where discretionary authority is expressly granted to the administrator or fiduciary, the reviewing court is to apply a "deferential standard of review." Id. at 111. This "deferential" review has been described as both an "arbitrary and capricious"

and "abuse of discretion" standard. Howley v. Mellon Fin. Corp.,
625 F.3d 788, 793 n.6 (3d Cir. 2010) (describing "arbitrary and
capricious" and "abuse of discretion" standards of review as
interchangeable in the ERISA context); see also Doroshow v.
Hartford Life & Acc. Ins. Co., 574 F.3d 230, 233 (3d Cir. 2009).
"Under the arbitrary and capricious (or abuse of discretion)
standard of review, the District Court may overturn a decision
of the plan administrator only if it is without reason,
unsupported by substantial evidence or erroneous as a matter of
law." Abnathya v. Hoffmann–La Roche, Inc., 2 F.3d 40, 45 (3d
Cir. 1993) (citations omitted); see also Fleisher, 679 F.3d at
121 ("Courts defer to an administrator's findings of fact when
they are supported by 'substantial evidence,' which we have
'defined as such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion.'") (citations
omitted). "This scope of review is narrow, and the court is not
free to substitute its own judgment for that of the defendants
in determining eligibility for plan benefits." Abnathya, 2 F.3d
at 45 (citations omitted). The Court applies this deferential
standard to Prudential's denial-of-benefit decisions in the
present case.

### B.    Structural Conflict of Interest Analysis

One potential source of abuse of discretion exists in cases
where, as here, the same party both makes the determination of

benefits and is responsible for payment of such benefits. In such cases, the Supreme Court has directed courts to weigh the potential for conflict of interest on the part of the decision-maker as one factor among many in determining whether the determination to deny benefits was arbitrary and capricious. Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008). The Supreme Court was careful to specify, however, that the presence of such a conflict does not subject the denial of benefits decision to a higher standard of review, such as a de novo review. Id. at 1161; see also Schwing v. Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009) (explaining that, in light of the Supreme Court's holding in Glenn, courts should "apply a deferential abuse of discretion standard of review across the board and consider any conflict of interest as one of several factors in considering whether the administrator or the fiduciary abused its discretion").

In the present case, Prudential took steps to mitigate the weight of this consideration by minimizing the conflict of interest. The LTD benefits under the Plan are not funded by Prudential, but instead through The Prudential Welfare Benefits Trust, which is a voluntary employees' beneficiary association ("VEBA"). (Schopfer Aff. [Docket Item 44-32] at ¶¶ 3-5.) The VEBA includes funds that are put aside specifically for LTD benefits and which may be added to as needed. (Id. at ¶¶ 6-7.)

23

The last time funds were added to the VEBA to pay LTD benefits
was 2006. (Id. at ¶ 8.) Thus, from a structural standpoint,
Prudential did not necessarily have a financial incentive to
deny Plaintiff's claim during the period for which he sought
disabilities, starting in 2011 and continuing to the present
date. See Bluman v. Plan Adm'r and Trustees for CAN's Integrated
Disabilities Program, 2010 WL 2483884, at *5-6 (D.N.J. June 4,
2010) (observing that when benefits are funded through a trust
rather than the general assets of the employer or where the
employer funds an ERISA plan through fixed contributions, there
is no conflict of interest) (citing Ketterman v. Affiliates
Long-Term Dis. Plan, 2009 WL 3055309, at *12 (W.D. Pa. Sept. 21,
2009), Fitzgerald v. Bank of America Corp., 2009 WL 3806759, at
*4 (E.D. Pa. Nov. 12, 2009), and Smathers v. Multi-Tool,
Inc./Multi-Plastics, Inc. Employee Health and Welfare Plan, 298
F.3d 191, 198-99 (3d Cir. 2002)). The Court does, however, note
that, at the time Prudential was making eligibility
determinations involving Plaintiff's claim, there was at least a
possibility Prudential might need to add funds to the VEBA at
some point in time, on an "as needed basis." Morgan v. The
Prudential Insurance Co. of America, 755 F. Supp. 2d 639, 643
(E.D. Pa. 2010). Accordingly, in conducting the remainder of its
abuse of discretion analysis, the Court "will remain mindful
that some small but nontrivial bias may have influenced

Defendant's decision to deny long-term disability benefits to Plaintiff." Scotti, 2009 WL 2243959, at *3.

### C. Prudential's Review of Plaintiff's Claim was not Arbitrary and Capricious

Plaintiff argues that Prudential abused its discretion by: (1) "relying solely on a single non-examining paper file review by an internist and its own employees, and completely disregarding uncontradicted supportive evidence of disability" (Pl.'s Br. at 9); (2) "fail[ing] to properly consider Plaintiff's subjective symptoms of pain, and improperly requir[ing] either 'objective' proof of pain, or proof that work would be 'injurious' in order to attribute any functional limitations" (id. at 12); (3) "failing to adequately review Plaintiff's evidence [and] refus[ing] to credit Plaintiff's treating physicians' opinions despite producing nothing more than speculative opinion in contradiction" (id. at 24); (4) "fail[ing] to consider whether any mental illness limitations were directly secondary to a physical condition" (id. at 27); (5) "fail[ing] to follow the requirements of 29 C.F.R. 2560.503-1(g)(1)(iii) by failing to provide any information as to what additional information was necessary for [Plaintiff] to perfect his claim" (id. at 29.) Defendant, meanwhile, maintains that Prudential's decision to terminate Plaintiff's LTD benefits was

entirely reasonable and not an abuse of discretion. (Def.'s Br. at 21-26.) The Court addresses each argument in turn.

### 1. Prudential's Reliance on File Reviews by an Internist and its own Employees

According to Plaintiff, "[i]n seeking only a single outside review from any source [who was] a non-specialist, and otherwise relying exclusively on its own employees, the Defendant engaged in a self-selecting and extremely cursory review of [Plaintiff's] claim, favoring itself at every turn and either ignoring or openly mischaracterizing that evidence which supported [his] claim." (Pl.'s Br. at 11.) Specifically, Plaintiff takes issue with Prudential's reliance on Dr. Lehrfield-Herschman and Dr. Wadhwa. Plaintiff, however, does not establish that Prudential abused its discretion by relying on either board-certified physician.

#### a. *Dr. Lehrfield-Herschman*

With respect to Dr. Lehrfield-Herschman, Plaintiff avers that Prudential abused its discretion because "[t]his 'peer reviewer' was not board-certified in gastroenterology or neurology, but instead, was only an internist and therefore not as qualified to evaluate Plaintiff's conditions as his treating specialists." (Id. at 11; see also Pl.'s Reply Br. [Docket Item 51] at 4.) Despite Plaintiff's argument to the contrary, Dr. Lehrfield-Herschman was more than qualified to conduct an

independent review of Plaintiff's claims, particularly with respect to Plaintiff's gastroparesis, because Dr. Lehrfield-Herschman is board-certified in internal medicine and gastroenterology is a subspecialty of internal medicine. See Gastroenterology, Internal Medicine Subspecialities, American College of Physicians, https://www.acponline.org/about-acp/about-internal-medicine/subspecialties/gastroenterology. That Dr. Lehrfield-Herschman is not specifically board-certified in gastroenterology or neurology is of no moment here. Cf. Bluman, 2010 WL 2483884, at *10 (holding that "reliance on the opinion of an outside specialist is evidence that a proper review occurred"); Davis v. Unum Life Ins. Co. of Am., 444 F.3d 569, 575 (7th Cir. 2006) (holding that "an administrators decision to seek[] independent expert advice is evidence of a thorough investigation") (internal citations omitted).

In any event, the record reflects that Dr. Lehrfield-Herschman conducted an extensive review of Plaintiff's medical files and reached reasonable conclusions. In her August 20, 2014 report, Dr. Lehrfield-Herschman acknowledged that Plaintiff had "a history of anxiety and depression, ADD for many years, hyperlipidemia, pulmonary nodules that are unchanged and very small, gastroparesis, low testosterone, diagnosis of dysautonomia, and neurological dysfunction." (AR 2542.) Notwithstanding these diagnoses, Dr. Lehrfield-Herschman opined

that Plaintiff did not have any limitations or restrictions from
any one condition or combination of conditions from May 4, 2014,
onward. (AR 2543.) Dr. Lehrfield-Herschman reached this
conclusion, in part, because, although Plaintiff had seen
multiple specialists, his complaints and treatment plan had not
changed other than his continued modified diet. (Id.) Dr.
Lehrfield-Herschman also found that, while Plaintiff had ongoing
GI-related complaints, each had been evaluated by Dr. Katz with
unremarkable findings except for an upper endoscopy which showed
only mild gastritis. (Id.) Most importantly, Plaintiff had only
visited Dr. Katz a few times in 2011 and 2012, and then
Plaintiff did not see Dr. Katz again until March 7, 2014, at
which time Dr. Katz noted that "[o]verall things are stable" and
told Plaintiff to "[f]ollow up in 1 year." (AR 2472-2473.)
Plaintiff subsequently submitted no medical records from Dr.
Katz from May 4, 2014, when his LTD benefits ended, through
November 23, 2015, the date of Prudential's final denial letter.
(Def.'s Opp. Br. [Docket Item 48] at 11.) This record of
unremarkable findings and very sparse treatment could lead a
reasonable factfinder to conclude that no serious problem, let
alone any disabling condition, existed. On this record, the
Court finds that Dr. Lehrfield-Herschman's findings were
reasonable and supported by substantial evidence and that
Prudential's reliance on Dr. Lehrfield-Herschman, an independent

physician board-certified in internal medicine, was not arbitrary and capricious.

   b.   *Dr. Wadhwa*

Plaintiff argues that Prudential also abused its discretion by having Dr. Wadhwa, Prudential's Medical Director and one of its Vice Presidents, conduct Plaintiff's second medical review instead of an independent, third party. (Pl.'s Br. at 11.) But Plaintiff fails to cite any authority for the proposition that an administrator per se abuses its discretion when it relies on its own medical director to make eligibility determinations. (See Pl.'s Br. at 9-12.) The cases Plaintiff does cite are not on point (see id. at 11-12, 24-26; Pl.'s Reply Br. at 4-5) and, in fact, the Third Circuit has held that such reliance is not abuse of discretion, see Marciniak v. Prudential Fin. Ins. Co. of Am., 184 F. App'x 266, 268 (3d Cir. 2006). Like Dr. Lehrfield-Herschman, Dr. Wadhwa is board-certified in internal medicine (as well as occupational medicine), and Plaintiff cites to no evidence that Dr. Wadhwa exhibited any bias against Plaintiff and in favor of Prudential or was otherwise unqualified to opine on Plaintiff's physical condition. Accordingly, the Court finds that Plaintiff's argument about Dr. Wadhwa's qualifications is without merit.

Plaintiff also argues that Dr. Wadhwa's review was "extremely cursory." (Id.) In fact, the record demonstrates Dr.

Wadhwa's review was both thorough and consistent with Plaintiff's medical records.

Dr. Wadhwa first conducted a clinical review of Plaintiff's claim on April 22, 2015 and, like Dr. Lehrfield-Herschman, concluded that Plaintiff retained capacity to work from a physical perspective. (AR 2850.) With respect to Plaintiff's gastroparesis, specifically, Dr. Wadhwa observed:

> There are no diagnostics in the file, such as a nuclear scan documenting/confirming attention [sic] of food in the stomach beyond normal time. The records indicate claimant's self-reported symptoms of variable intensity – nausea, bloating, discomfort – summarize[d] in the 5/19/2014 letter of Dr. Katz G.I. Dating back to at least 2010. The claimant last saw/sought G.I. opinion in March 2014. Prior to that he had seen the specialist approximately once or twice in one year. The intensity of management was minimal including dietary changes example small frequent meals and symptomatic treatment with medicines like metoclopramide (see last visit 3/07/13) with a follow-up after one year. In addition there is no evidence of any deleterious effect of this disease (gastroparesis). On the contrary, over time while he was having this self-reported symptoms [sic], the claimant has steadily gained weight - around 168 pounds noted by the PCP, 01/16/2013, to 190 pounds noted by Dr. Katz on 3/17/2014. It appears that the condition would be readily controlled by frequent small meals, did not result in negative effects, and had minimal intensity of management- decontrol being a matter of choice largely. So, self-reported symptoms that could be controlled with choice of small meals and minimal or no intensity of medical management, plus no evidence of deleterious effects such as loss of weight, would not support limitations of inability to physically work. The claimant would not require work restrictions, as work would not be injurious to the claimant in worsening gastroparesis. On the contrary, physical activities tend to improve gastric motility.

(AR 2849.)

On July 6, 2015, Dr. Wadhwa conducted an addendum clinical review to address the favorable ALJ decision and additional medical records Plaintiff provided to Prudential. (AR 2832-2839.) Among other things, Dr. Wadhwa concluded that the ALJ's decision was consistent with Prudential's own disability determinations because the ALJ's decision placed greater weight on Plaintiff's psychological limitations than his physical limitations. (AR 2834-2835.)

On July 22, 2015, Dr. Wadhwa reviewed Plaintiff's first EMG results and opined that these results showed "abnormal sensory response, [n]o denervation, normal motor conduction all in the context of a 'normal neurological exam by a neurologist just a few weeks ago – are not significant and would not preclude any work." (AR 2831.) On October 29, 2015, Dr. Wadhwa reviewed Plaintiff's second EMG results and CT from Plaintiff's emergency room visit, as well as other medical records Plaintiff had provided (AR 2823-2827) and opined that the additional information supported Plaintiff's physical capacity to work a medium level job. (AR 2826.) Plaintiff also submitted an updated pulmonary function test, which Dr. Wadhwa reviewed and, on November 23, 2015, opined that those tests "are showing better results than the ones on 10/07/2015." (AR 2812-2813.)

Each time Plaintiff submitted new medical records or additional information, Dr. Wadhwa reviewed these documents and

reached the reasonable conclusion that the available evidence demonstrated that Plaintiff had the ability to work. For these reasons, Prudential did not abuse its discretion by relying upon Dr. Wadhwa.

### 2. Prudential's Alleged Failure to Properly Consider Plaintiff's Subjective Symptoms of Pain

Plaintiff next argues that Prudential abused its discretion by improperly requiring objective or diagnostic "proof" for a disability based upon pain or subjective symptoms when the Plan does not require such proof. (Pl.'s Br. at 12-24.) Specifically, Plaintiff claims Dr. Lehrfield-Herschman "dismissed both the objective findings and treatment and the subjective limitations of [Plaintiff's] underlying gastrointestinal, neurological, and other disorders" (id. at 15), while Dr. Wadhwa "dismissed the possibility of pain as a limiting factor and appeared to limit the assignment of any type of limitations to only those cases in which attempting to work would be 'injurious,'" (id. at 23.)[5]

---

[5] The Court notes that Plaintiff cites several cases involving fibromyalgia and chronic fatigue syndrome in support of this argument. (Id. at 17-20) (citing Lamanna v. Special Agents Mut. Benefits Ass'n, 546 F. Supp. 2d 261 (W.D. Pa. 2008), Hawkins v. First Union Corp. Long-Term Disability Plan, 326 F.3d 914 (7th Cir. 2003), Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666 (9th Cir. 2011), and Saffrom v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863 (9th Cir. 2008)). The Court finds that these cases are neither binding nor on point with respect to Plaintiff's gastroparesis or other physical conditions.

Contrary to Plaintiff's argument, the record shows that Dr. Lehrfield-Herschman did, in fact, consider Plaintiff's self-reported pain, but simply determined that the medical evidence did not support any restrictions or limitations to corroborate those complaints. (AR 2538-2546.) As discussed in Section IV.C.1.a, supra, Prudential did not abuse its discretion by relying on Dr. Lehrfield-Herschman's report. Nor did Prudential abuse its discretion by its treatment of Plaintiff's reported pain. See Zurawel v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson, 2010 WL 3862543, at *17 (D.N.J. Sept. 27, 2010) (finding that Defendant did not abuse its discretion when "none of the evidence presented by Plaintiff establishes that the pain Plaintiff suffered was so debilitating as to prevent him from performing the essential functions of his job as a medical writer"); Dolfi v. Disability Reinsurance Management Services, Inc., 584 F. Supp. 2d 709, 731-35 (M.D. Pa. 2008) (finding that Defendant did not abuse its discretion by determining that, based on Plaintiff's medical records, they were unable to conclude that her "pain complaints or other medical conditions would preclude [her] ability to work in a sedentary or light duty work capacity from 1999 to present") (internal citation omitted).

3.    Prudential's Alleged Refusal to Credit the
      Opinions of Plaintiff's Treating Physicians

Plaintiff also avers that Prudential abused its discretion by "refus[ing] to credit Plaintiff's treating physicians' opinions despite producing nothing more than speculative opinion in contradiction." (Pl.'s Br. at 24.) In support of this position, Plaintiff repeats many of the same arguments addressed supra, including that "Prudential abused its discretion by relying exclusively on a single paper review by an internist and its own employee" (Section IV.C.1) and that Prudential abused its discretion by "dismissing all pain and non-exertional limitations" (Section IV.C.2). Notably, Plaintiff does not point to any treating physician's opinion or other contradictory evidence that Prudential ignored.[6] Nor has Plaintiff otherwise shown that Prudential failed to "accord special weight to the opinions of a claimant's physician." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). Rather, after reviewing all of the medical evidence, including the opinions of those treating physicians, Prudential reasonably determined that the medical evidence did not support the conclusion that Plaintiff's physical condition rendered him disabled. See Young v. Am. Int'l Life Assur. Co. of New York, 357 F. App'x 464, 469 (3d Cir.

---

[6] In fact, Dr. Katz never specifically opined that Plaintiff was disabled from his gastroparesis.

2009) ("Given the lack of medical evidence suggesting physical
disability . . . [defendant] did not abuse its discretion in
disregarding [the physician's] unsupported disability
conclusion. . . ."). Again, Prudential did not abuse its
discretion.

       4.   <u>Prudential's Alleged Failure to Consider Whether</u>
           <u>any Mental Illness Limitations Were Directly</u>
           <u>Secondary to a Physical Condition</u>

Plaintiff next argues that Prudential failed to consider
whether any of his mental conditions, including ADD and
depression, were directly secondary to a physical condition,
namely gastroparesis, which would negate the 24-month limitation
on mental illnesses under the Plan. (Pl.'s Br. at 27-29.) In
support of this argument, Plaintiff primarily relies on two non-
binding cases, wherein the court found that the claimant's
mental conditions at issue were caused by a physical condition.
(<u>Id.</u> at 28) (citing <u>Morgan</u>, 755 F. Supp. 2d. at 645, and <u>White</u>
<u>v. Prudential Ins. Co. of America</u>, 908 F. Supp. 2d 618, 636-37
(E.D. Pa. 2012)). Unlike in those cases, Plaintiff here fails to
show that his ADD or depression are directly linked to his
gastroparesis. Indeed, according to the administrative record,
Plaintiff had ADD "for many years" (AR 2542) and reported that
he suffered from depression "for a long time." (AR 2901.) In any
event, Prudential ultimately determined that, even though it
paid Plaintiff LTD benefits for 24 months under the Plan,

Plaintiff did not have **any** limitations from a physical **or**
psychological standpoint (AR 2882), and, as discussed above,
Plaintiff has not demonstrated that Prudential abused its
discretion in doing so. Here too, Plaintiff has not shown that
Prudential abused its discretion.

    5.    Prudential's Alleged Failure to Provide
          Information as to What Additional Information was
          Necessary for Plaintiff to Perfect His Claim

    Plaintiff's last argument is that Prudential abused its
discretion by failing to provide "any specific guidance as to
'any additional material or information necessary for the
claimant to perfect the claim and an explanation of why such
material or information is necessary,'" as required by 29 C.F.R.
2560.503-1(g)(1)(iii). (Pl.'s Br. at 29-30) (citing Miller v.
Am. Airlines, Inc., 632 F.3d 837, 852 (3d Cir. 2011)). To the
contrary, in the April 21, 2014 termination letter, Prudential
explained to Plaintiff that his medical records did not support
that he had any limitations from either a physical or
psychological standpoint and that, if Plaintiff wished to appeal
Prudential's decision, he must do so within 180 days and include
"the reasons that [he] disagree[d] with our determination" and
"medical evidence or documentation to support [his] position,
along with any other materials [he] wish[ed] to present relating
to [his] claim." (AR 1864-65.) As Prudential explained, among
the evidence or documentation Plaintiff could provide were

"copies of therapy treatment notes," "any additional treatment records from physicians," and "actual test results (e.g. EMG, MRI)." (AR 1865.) Prudential provided more than adequate explanation regarding the termination of Plaintiff's LTD benefits and provided proper information regarding Plaintiff's ability to "perfect his claim" through the appeal process. See Reed v. Citigroup, Inc., 2015 WL 1517791, at *25 (D.N.J. Apr. 1, 2015). Therefore, Prudential did not abuse its discretion.

**D.    Defendant's Counterclaim to Recover for Overpayment**

Prudential has also brought a Counterclaim for overpayment under the Plan. [Docket Item 4.] According to the Plan, Prudential was required to offset from a claimant's LTD benefit "Deductible Sources of Income," which includes disability payments received under the Social Security Act. (AR 0670-0671.) The Plan further requires that "[t]he Plan has the right to recover any overpayments due to . . . the Employee's receipt of Deductible Sources of Income" and, "[i]n the event of any overpayment, the Employee must reimburse the Plan in full." (AR 0686.) Additionally, on May 23, 2012, Plaintiff executed a Reimbursement Agreement, which states in relevant part:

> If Worker's Compensation and/or any benefits under the
> Social Security Act are awarded retroactively, I agree
> to repay Prudential immediately the amount paid to me
> under this agreement in excess of the amount to which I
> would have been entitled under the plan.

(AR 2842.)

Prudential claims that, as a result of Plaintiff's receipt of Social Security Disability benefits beginning June 2012, Prudential overpaid Plaintiff $52,930.92. (AR 2842.) To that end, Prudential filed a Counterclaim against Plaintiff to recover $53,060.70[7] pursuant to 29 U.S.C. § 1132(a)(3). [Docket Item 4.] Prudential argues the Supreme Court "has recognized that administrators are able to bring counterclaims against participants under section [1132(a)(3)], and has instructed that only equitable relief is allowed when a fiduciary brings a claim against a participant for an overpayment of benefits." (Def.'s Br. at 30) (citing U.S. Airways, Inc. v. McCutchen, 569 U.S. 88, 94-95 (2013) and Sereboff v. Mid Atlantic Med. Servs., 547 U.S. 356, 369 (2006)). Prudential argues that it's Counterclaim "falls squarely within Sereboff" and that Prudential is, therefore, entitled to summary judgment on its Counterclaim. (Def.'s Br. at 31.)

Plaintiff, meanwhile, represents to the Court that the LTD benefits paid by Defendant "had been fully dissipated on non-traceable goods prior to his receipt of Social Security Disability benefits" (Pl.'s Opp. Br. at 20), which were awarded on April 1, 2015. (AR 2686.) Plaintiff argues that Defendant "is

_____

[7] The Court is unable to discern why the Counterclaim seeks $53,060.70 when Prudential's records indicate that $52,930.92 was purportedly overpaid. (AR 2842.)

not entitled, under _Sereboff_ or any other authority to seek its overpayment from other, unrelated funds." (Pl.'s Opp. Br. at 20-21.) To that end, Plaintiff apparently provided bank records and other documentation to Defendant showing that any allegedly overpaid benefits had dissipated prior to the accrual of any overpayment, and has offered to provide the same to the Court, if requested, under seal. (_Id._ at 20.)[8] At a later time, the Court may take Plaintiff up on his offer.

The Court agrees with Plaintiff that the majority of the facts relevant to Prudential's overpayment claims are not part of the administrative record (_see_ Pl.'s Opp. Br. at 20 n.3), and finds that, on this record, there are genuine disputes of material fact as to Prudential's Counterclaim. Accordingly, summary judgment will be denied with respect to the Counterclaim only.

## V.  CONCLUSION

Plaintiff received 26 months of STD benefits and two years of LTD benefits, the maximum allowed under the Plan for disabilities due in whole or in part to mental illness. Prudential ultimately determined that Plaintiff was not eligible for additional LTD benefits after determining that his physical

---

[8] Prudential opted, in its reply brief, not to address Plaintiff's representations and arguments on the overpayment issue. (_See_ _generally_ Def.'s Reply Br. [Docket Item 50].)

conditions, including a diagnosis of gastroparesis for which Plaintiff did not seek any treatment between 2012 and March 7, 2014, did not prevent him from working. Prudential made this determination following a lengthy review process of Plaintiff's medical records involving several doctors and nurses, which involved an independent physician who is board-certified in internal medicine, another physician who is board-certified in internal and occupational medicine, and two separate appeals. The plain language of the Plan clearly grants Prudential full discretion to make all eligibility determinations, and the Court finds Prudential did not abuse this discretion.

For these reasons, as well as those explained above, the Court will deny Plaintiff's motion for summary judgment and grant Defendant's cross-motion for summary judgment, except with respect to Defendant's Counterclaim. The parties shall confer and jointly-propose a plan within fourteen (14) days as to how to proceed with respect to Defendant's Counterclaim in light of the genuine disputes of material facts (and missing evidence) on this record. An accompanying Order will follow.


**September 21, 2018**                          **s/ Jerome B. Simandle**
Date                                            JEROME B. SIMANDLE
                                                U.S. District Judge